**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

GINA GOE, individually and as parent and next friend of GRACE GOE; KARLA KOE, individually and as parent and next friend of KYLIE KOE; LAURA LOE, individually and as parent and next friend of LOGAN LOE; and MELISSA MOE, individually and as parent and next friend of MAYA MOE,

*Plaintiffs,*

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; CENTERS FOR MEDICARE & MEDICAID SERVICES; and MEHMET OZ, in his official capacity as Administrator of CMS,

*Defendants.*

Civil Action No. ____________

**DECLARATION OF KARLA KOE IN SUPPORT OF EXPEDITED MOTION FOR PRELIMINARY INJUNCTION AND PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYM**

I, Karla Koe,[1] hereby declare and state as follows:

1. I am over the age of 18, of sound mind, and in all respects competent to testify. I have personal knowledge of the information contained in this Declaration and would testify competently to those facts if called to do so.

2. I am a plaintiff in this Action and I am the parent and next friend of my minor child, Kylie Koe.

[1] Because of concerns about my child's privacy and safety, I am seeking to proceed in this case under a pseudonym. *See Motion to Proceed Under Pseudonym*, filed concurrently herewith. In addition, contemporaneous with signing this declaration, I have signed with my legal name a separate copy of this declaration. My attorneys have a copy of that separate declaration.

3. I am a resident of New Hampshire. I live in Hillsborough County with my two children and their father.

4. My daughter Kylie is thirteen years old. She is a transgender girl. She has lived as a girl since she was six or seven years old—roughly half of her life. Kylie is a Medicaid beneficiary. Medicaid is her only health insurance.

5. Kylie was drawn to femininity from early childhood, and long before she had the words for it, she was showing us who she was. In first grade she found the words. She told her brother that she is a girl, and he came to me and said, "We are not brothers anymore." That was not the beginning of anything for Kylie, but it was the point at which the rest of us caught up to what she already knew about herself. She began living fully as a girl around age six or seven, and she has lived that way, consistently, for roughly half of her life.

6. Kylie began seeing a mental health provider in 2021, who diagnosed her with gender dysphoria. She has also been diagnosed with depression, anxiety, and ADHD. Before she began mental health treatment, she regularly shut down at school. She would stop speaking, refuse to do her work, she sat alone in a corner, and could not be reached by her teachers. With medication and treatment, she is now able to manage those symptoms and get through the school day. But her stability is hard-won and fragile, and it depends on her being able to live as who she is.

7. Most of the students at Kylie's school do not know that she is transgender. They have only ever known her as a girl. That is how Kylie wants it. Being seen simply as a girl—not as a transgender girl—is essential to her sense of safety and belonging at school.

8. I have seen how devastating it is for Kylie when even one person sees her as anything other than a girl. On one occasion, a neighborhood boy called her by her given name, which is a boy's name. His mother corrected him right away, but the damage was done. Kylie

became despondent. She spent the entire next school day in the counselor's office, unable to bring herself to go to class. On another occasion, a classmate used her given name, and Kylie was overcome with anger and fear. She accused her brother of revealing her name to other students, even though he had done nothing of the kind. A single word from one person was enough to keep her out of the classroom for a day and to turn her against her own brother.

9. Since approximately 2024, Kylie has been treated at a gender clinic in New Hampshire, where her care has been overseen by a pediatric endocrinologist for several years. Her endocrinologist is tracking her physical development closely and has told us this week that Kylie has reached Tanner stage 2, the point at which the outward physical changes of male puberty begin.

10. Kylie knows those changes are coming. She is terrified that other people will begin to see her as a boy. For Kylie, this is not an abstract fear. She has spent her entire school life as a girl, and the students around her do not know she is transgender. If her voice deepens and her face and body begin to change, every one of them will find out at once—not because she chose to tell them, but because her body will tell them for her. She would lose control over the most private fact about herself, in front of everyone she knows.

11. Kylie's endocrinologist has explained to us what male puberty would do to her body if it is allowed to proceed: her voice would drop and would never come back, hair would grow on her face and chest, her jaw and brow would broaden, and an Adam's apple would form. Once those changes have happened, they cannot be reversed by any medication. The doctor has also explained that puberty blockers are effective only if they are started at the beginning of puberty, before these changes take hold. That is why the timing matters so much: the window in which this medication can protect Kylie is about to open, and once it closes it will not open again.

12. I know my daughter. If she begins to develop the outward physical characteristics of a boy, she will refuse to go to school. She will refuse to go out in public at all if she believes people will not see her as a girl. I know this because I have already watched a single misused name keep her out of the classroom for a day. Kylie is thirteen. She is already living with depression and anxiety, and she is at an age when a child's sense of self is especially vulnerable. I am deeply afraid of what forced masculinization would do to her mental health, her education, and her safety.

13. Under the care of her pediatric endocrinologist, Kylie has a medical treatment plan in place. Her doctor plans to prescribe puberty blockers now that she has reached Tanner stage 2. I understand that this medication will pause puberty so that Kylie does not develop the permanent physical characteristics of an adult male while she continues to grow and mature. Her doctors, her father, and I all agree that this is the right treatment for Kylie, and Kylie herself wants it.

14. We are a low-income family of four. The only way we can afford puberty blockers for Kylie is through Medicaid. I understand that this medication costs up to $50,000 as an implant, which is more than our family earns in nine months. We have no other health insurance for Kylie and no savings or other resources to pay for this medication out of pocket. Without Medicaid coverage, Kylie will not receive this medication. That is not a choice we are making; it is simply the reality of our family's finances.

15. I understand that the federal rule prohibiting Medicaid coverage for this care is scheduled to take effect on October 13, 2026, which is weeks from now, and at almost exactly the moment Kylie needs this medication. I also understand that the rule provides no transition period for children who need puberty blockers. If the rule takes effect, I know of no way for Kylie to receive puberty blockers. Her body will start to change, and those changes will be permanent, while this case is being decided.

16. Kylie's doctors have recommended this treatment. Kylie wants it. Her father and I have decided that it is in her best interest. The rule takes that decision away from us—not because anyone has concluded that this treatment is wrong for our daughter, but because we cannot pay for it ourselves.

17. The rule is already harming our family. Since we learned of it, Kylie's father and I have lived with constant fear about what will happen to her. I do not know how to tell my daughter that the treatment she has been counting on may be taken away at the very moment she needs it. I am asking the Court to stop this rule before it is too late for her.

18. I am asking that Kylie be permitted to proceed under a pseudonym so that she can maintain her privacy during this lawsuit. She is young and I am afraid because of the attention placed on transgender kids nationally and in New Hampshire. Kylie wants agency over who knows personal information about her, including that she is transgender, especially when it comes to members of the public. While she has a supportive family and community, we do not know how other people will treat Kylie if they learn that she is a part of this lawsuit.

19. I am also asking to proceed under a pseudonym because using my full name would identify Kylie as well. My identity could easily be linked to Kylie, given that we live in a small community in a small state. For these reasons, I am asking that the Court allow Kylie and me to use pseudonyms in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of September 2026.

Respectfully,

__________________

Karla Koe

16. Kylie's doctors have recommended this treatment. Kylie wants it. Her father and I have decided that it is in her best interest. The rule takes that decision away from us—not because anyone has concluded that this treatment is wrong for our daughter, but because we cannot pay for it ourselves.

17. The rule is already harming our family. Since we learned of it, Kylie's father and I have lived with constant fear about what will happen to her. I do not know how to tell my daughter that the treatment she has been counting on may be taken away at the very moment she needs it. I am asking the Court to stop this rule before it is too late for her.

18. I am asking that Kylie be permitted to proceed under a pseudonym so that she can maintain her privacy during this lawsuit. She is young and I am afraid because of the attention placed on transgender kids nationally and in New Hampshire. Kylie wants agency over who knows personal information about her, including that she is transgender, especially when it comes to members of the public. While she has a supportive family and community, we do not know how other people will treat Kylie if they learn that she is a part of this lawsuit.

19. I am also asking to proceed under a pseudonym because using my full name would identify Kylie as well. My identity could easily be linked to Kylie, given that we live in a small community in a small state. For these reasons, I am asking that the Court allow Kylie and me to use pseudonyms in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of September 2026.

Respectfully, Karla Koe

Karla Koe