UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Gina Goe, individually and as parent and next friend of Grace Goe; Karla Koe, individually and as parent and next friend of Kylie Koe; Laura Loe, individually and as parent and next friend of Logan Loe; and Melissa Moe, individually and as parent and next friend of Maya Moe,
Plaintiffs

v. Case No. 26-cv-0803-SM-TSM
Opinion No. 2026 DNH 163

United States Department of Health and Human Services; Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services; Centers for Medicare & Medicaid Services; and Mehmet Oz, in his official capacity as Administrator of CMS,
Defendants

**O R D E R**

On August 13, 2026, the Centers for Medicare & Medicaid Services published a final rule entitled "Medicaid Program: Prohibition on Federal Medicaid and Children's Health Insurance Program Funding for Sex-Rejecting Procedures Furnished to Children." 91 Fed. Reg. 52406 (Aug. 13, 2026) (to be codified at 42 C.F.R. §§ 441.800 - 441.802 and 42 C.F.R. § 457.476). The Rule, which took effect on October 13, 2026, prohibits states from using federal Medicaid funds to pay for services that CMS

labels as “sex-rejecting procedures,” and plaintiffs call “evidence-based treatment for gender dysphoria” for adolescents diagnosed with pediatric gender dysphoria. Gender dysphoria is a recognized medical condition characterized by a sustained and significant difference between one’s experienced gender and the biological gender assigned at birth. The Rule also prohibits the use of State funds to pay for those services within the Medicaid program, although states may provide funding for the services under separately established state programs. New Hampshire has no such separate programs.

Plaintiffs, four transgender adolescents currently enrolled in New Hampshire’s Medicaid program, along with their parents, filed this suit on October 1, 2026. They ask the court to declare the federal Rule unlawful and unenforceable on multiple bases, and they seek preliminary relief enjoining the Rule’s enforcement as to the named adolescent plaintiffs' Medicaid-covered care, pending final judgment.

The Medicaid health insurance program is a cooperative state-federal partnership designed to provide healthcare services for low-income and other eligible people who cannot otherwise obtain medical care. The Medicaid Act requires participating states to adopt a “State plan,” 42 U.S.C.

§ 1396a(a), describing how the State will run its Medicaid program. State plans are subject to federal oversight and approval. See Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano, 695 F.3d 83, 90 (1st Cir. 2012) ("a participating State must submit a 'State plan' proposal for approval from the U.S. Secretary of Health and Human Services before it is eligible to receive federal Medicaid funding.") (citations omitted). New Hampshire participates in the Medicaid program and has a federally approved State plan.

With respect to the Rule (and dispute) at issue here, on October 1, 2026, New Hampshire's Medicaid plan administrators wrote to the Centers for Medicare and Medicaid Services, stating:

> The recent CMS regulations issued on August 11, 2026, are largely consistent with New Hampshire law. With CMS regulations going into effect on October 13, 2026, New Hampshire law will have already been implemented by this date.
>
> The New Hampshire Medicaid Program does not anticipate any changes to the State Plan or 1115 demonstration waivers in response to this rule beyond the template assurance SPA [State Plan Amendment] (under public comment) regarding the Medicaid agency not claiming Federal financial participation under the plan for sex-rejecting procedures for children under the age of 18 pursuant to federal regulations at 42 C.F.R. 441

> Subpart N. These services are defined at 42 C.F.R. § 441.80.

See Document No. 27-1 at 2. The State's Health and Human Services Commissioner seemingly declared in that letter that, prior to the Rule's effective date, the State of New Hampshire had already modified its Medicaid State Plan to exempt from coverage the gender dysphoria treatment at issue here. If that is the case, then even if the plaintiffs eventually succeed in their suit to have the Rule declared invalid, their treatment costs will still not be covered by the State's Medicaid plan, Rule or no Rule.

The State is not a party to this litigation. Putting aside whether CMS exceeded the authority delegated to it by Congress when it enacted the Rule (a legitimate argument for which can be made[1]), the State can probably exclude plaintiffs' treatment from Medicaid coverage under its plan. See, e.g, 42 C.F.R. § 440.230(d) (state Medicaid agencies "may place appropriate limits on a service based on such criteria as medical

---

1 Several states, not including New Hampshire (at least not currently), are directly challenging the federal Rule in the District of Massachusetts. See Illinois et al. v. U.S. Dept. Health & Hum. Servs., No. 1:26-cv-14051-WGY (D. Mass). Those states provide Medicaid coverage for gender dysphoria treatment, and seek to invalidate the federal Rule barring federal funding participation under the Medicaid Act.

necessity.”); Preterm, Inc. v. Dukakis, 591 F.2d 121, 125 (1st Cir. 1979) (“[w]e see two levels of judgment as to medical necessity in the [Medicaid] statutory scheme. The first is the macro-decision by the [state] legislature that only certain kinds of medical assistance are deemed sufficiently necessary to come under the coverage of its plan. The second is the micro-decision of the physician, that the condition of his patient warrants the administering of a type of medical assistance which that plan makes available;”) Rush v. Parham, 625 F.2d 1150, 1154 (5th Cir. 1980) (“a state may adopt a definition of medical necessity that places reasonable limits on a physician's discretion.”). Cf., U.S. v. Skrmetti, 605 U.S. 495, 500, 145 S. Ct. 1816, 1824, 222 L. Ed. 2d 136 (2025) (Tennessee law banning certain medical care for transgender minors does not violate the Equal Protection Clause of the Fourteenth Amendment); Anderson v. Crouch, 169 F.4th 474, 480, 497 (4th Cir. 2026) (upholding West Virginia’s Medicaid coverage exclusion for “‘transsexual’ and ‘[s]ex change’ surgeries” because “[s]tates can reasonably regulate treatments for gender dysphoria without discriminating against any protected class, and that these regulations are not inherently irrational;” and declining to reach claims under Medicaid Act for lack of private right of action). But see 42 U.S.C. §§ 1396d(a)(4),(a)(16) and (r) (mandating that Medicaid

beneficiaries under the age of 21 receive coverage for all "medically necessary" services); see also S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 590 (5th Cir. 2004) ("every Circuit which has examined the scope of the [Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT")] program has recognized that states must cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)") (citations omitted).

Plaintiffs point to N.H. Rev. Stat. Ann. § 331-N:2, the statute referenced in the State's compliance letter, in arguing that, if not for the new federal administrative Rule, New Hampshire's Medicaid program would continue to cover their treatment. They note that – despite generally prohibiting the medical treatment plaintiffs are receiving — the statute unarguably carves out a "safe harbor," permitting such medical services if the treatment began before January 1, 2026. Plaintiffs fall within the statute's continuing coverage (or "safe harbor") provision, having begun a course of treatment or care for gender dysphoria prior to January 1, 2026.

The statute does not, however, speak to whether the State's Medicaid program covers the costs of continuing treatment. By its terms, the safe harbor provision modifies only the statute's

general prohibition by permitting physicians and medical professionals to continue the otherwise prohibited treatment for those patients receiving it as of January 1, 2026. Notwithstanding the statute's continuing care provision, the State has, seemingly, amended its plan to exclude Medicaid coverage for that treatment. The State's October 1, 2026, letter to CMS, while a bit vague and indefinite, does seem to say, in substance, that New Hampshire's Medicaid State Plan does not cover the plaintiffs' continuing treatment, based on New Hampshire law and not solely because the federal Rule precludes federal or state funding within its Medicaid plan.[2]

Because the State is not a party, and because the State Plan probably excludes coverage, plaintiffs cannot succeed in

---

[2] The Commissioner's letter asserts that the new federal Rule is "largely" consistent with "New Hampshire law" (presumably the prohibitive statute), but does not say that the State's Medicaid plan is fully consistent with the new Rule. As noted, New Hampshire's statute permits continuation of plaintiffs' medical treatment, which has previously been covered by New Hampshire Medicaid. So, one might think that, because the State Commissioner asserted that the Rule is only "largely" consistent with state law, and that the state law "will have already been implemented" before the Rule took effect, that the "implemented" State law already amended the State Plan to cover the continued treatment allowed by the statute. It is more likely, however, that the State's plan does not cover plaintiffs' continued treatment, even though that treatment can be lawfully obtained in New Hampshire. The record does not disclose the nature and extent of any relevant State Plan amendments.

obtaining Medicaid coverage, even if the Rule is deemed to be unlawful as a usurpation of Congress's legislative power. In other words, for plaintiffs to obtain injunctive relief, they must show that they face imminent and irreparable harm from the Rule's application. See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 50 (1st Cir. 2020) (noting that, because "a federal court can act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court," and injunctive relief sought would not remedy the alleged injury, plaintiff failed to meet the redressability requirement) (citations omitted) (cleaned up). The State Medicaid Plan's exclusion of coverage, depending on its scope, could render any harm from the Rule to be separate and not determinative in this case. Nothing in this record clearly establishes that but for the Rule (that followed the State's prohibitive legislation) New Hampshire's Medicaid plan would cover plaintiffs' continuing treatment. See id. at 47 ("it cannot be merely speculative that, if a court grants the requested relief, the injury will be redressed.").

This record requires further development, or at least clarification. Several questions and vague assertions of material fact require resolution to an acceptable degree of

certitude before the petition for injunctive relief can be addressed. Accordingly, within fourteen (14) days of the date of this order, the parties shall submit supplemental briefs (and proffer supporting admissible evidence if appropriate) addressing at least the following specific questions:

(1) Must the State of New Hampshire be added as a necessary party to this suit for effective relief to be granted, and if so, do plaintiffs have standing to challenge the State's apparent coverage exclusion (assuming the State's exclusion does not adopt the statute's safe harbor provision)?

(2) What exercise of authority (citations) establishes that the State has amended its Medicaid Plan to exclude coverage of the continuing treatment being received by <u>these plaintiffs</u>? (As distinguished from merely committing not to use federal or state funds within the Medicaid plan to cover plaintiffs' continuing care.)

(3) If the continuing treatment being received by these plaintiffs has been excluded by the State from Medicaid coverage, does N.H. Rev. Stat. Ann. § 331-N:2 establish a "medical necessity" for continued treatment for <u>these plaintiffs</u>, for which continued treatment must then be provided under EPSDT, notwithstanding plan exclusion and notwithstanding the Rule's commands?

(4) Does the record as it stands or as supplemented establish that New Hampshire's Medicaid State Plan does not cover the costs of plaintiffs' continuing treatment without regard to the Rule, or, but for the Rule, would the plaintiffs' continuing treatment be covered under the plan?

A further hearing will be scheduled by the deputy clerk, if necessary, after supplemental briefs are filed.

**SO ORDERED.**

________________________________
Steven J. McAuliffe
United States District Judge

November 16, 2026

cc: Counsel of Record